Mr. Justice Humphreys
delivered the opinion of the court:
The defendant was arrested on the 18th day of March, 1869, taken before a justice of the peace, in this city and District, and judgment rendered against him for five dollars penalty.
The charge against him, stated in the warrant of arrest, is, that he, the said Return J. Meigs, on the 1st of January, 1869, did own, possess, harbor, and conceal one animal of the dog kind without license, and after becoming owner failed to obtain a license.
From the judgment rendered against him by the justice of the peace, the defendant obtained a certiorari, and the case was heard at the October term, 1872, of the circuit court, at which time judgment was rendered against defendant, and he appealed to the court in general term.
The corporation of Washington, on the 11th of January, 1858, adopted an ordinance in the language following:
"Sec. 1. It shall not be lawful for any person residing within the city of Washington to own or keep any animal of the dog kind without obtaining from the register of the city a license to do so, and such stamps and insignia as may, from time to time be designated by the mayor; for which license and insignia or stamps he shall pay the sum of two dollars per annum if a male animal, and five dollars per annum if a female animal.”
Section 2 of the ordinance imposes a forfeiture of five and ten dollars for a male dog, and ten and twenty dollars for a female, if the owner or keeper fails to obtain a license.
It is contended by the counsel for the District that this regulation is a police one, within the power of municipal corporations to prescribe. Corporate authorities have, for a long while at least, assumed to make police regulations in regard to all animals, particularly the dog and the hog, and in regard to the dog the regulation has often been confined to particular seasons of the year.
*58 This general power is conferred on municipal corporations by their charters.
These regulations are most generally made in relation to the animal running at large.
In the case before us, the corporation undertook to impose a penalty on any owner of a dog within the city who should keep a dog without first obtaining a license therefor.
The law recognizes property in and to dogs, and the owner thereof is entitled to his remedies for an invasion of his rights of property. This is too well settled in England and in the States of this Union to be now questioned.
The right of property in animals cannot be declared unlawful unless a license is first obtained. We do not undertake to say that a given or particular mode of using any kind of property might not be prohibited, but for the general possession of that in which the right of property exists, which is not a mere franchise, how can it be declared unlawful, and a license demanded, before the person is authorized to own or keep?
If dogs are property they may be taxed, and the tax assessed to the owner. But would it be claimed that for the non-payment of the tax the owner could be arrested, fined, and imprisoned?
We think with the learned defendant, who argued the case for himself, that Congress did not confer upon the corporation the power to interfere with rights of property as recognized at the time of the cession of the District. We are not called upon, however, to pass upon the question of the powers of Congress under the grant, to exercise exclusive legislation in all cases whatever.”
The dog may be taxed, and we do not say that other prop erty might not be held liable for the tax.
We do not say that the owner may not be required at certain seasons to muzzle his dog, and for suffering him to run at large without it he may be subjected to a fine. This power would exist, to make some police regulation in a proper way, for the safety of a community.
But here was an ordinance declaring the owner a criminal and subjecting him to arrest, imprisonment, and fine for keeping his property at home, unless he first obtained a license.
*59 We are not called upon in this case to pass upon the power of the proper government of a State to declare any species of property heretofore recognized as property to be a nuisance, and to abate it as such whenever it becomes destructive to society, for that question is not made upon the record, nor was it made in the court below. It came up in argument incidentally, and the remarks of counsel for the plaintiff and defendant gave an interesting impression upon the nature and character of the animal about which this case arose.
Not only has the dog been the subject of discussion in the courts, as involving the question of property, but his virtues have been celebrated in song. The wrongs done him have been touchingly described by poets, and hours have been occupied at the camp-fires of huntsmen in narrating the achievements of favorite hounds.
That the law has recognized the relations of property in any species of it, arises from the ascertained usefulness in some way to the wants of man of that particular object or subject of property. The right to the property is recognized for its protection.
History informs us of noble acts of fidelity and affection performed by some sentinel of the class under consideration.
Our attention has been called by our brother, Olin, to the event of so much interest to the world, and to the cause of freedom of opinion, and to the exercise of a conscientious faith, the rescue from the grasp of the enemies of toleration of William of Orange, on the morning of the 12th September, 1572, by the action of a little dog.
The Spanish army, under the command of Alva, invading the Netherlands, and the army of patriots under the command of the prince, were encanqmd near the city of Mons. The plan was formed for the surprise of the camp of the patriots and the capture or assassination of William, and for this purpose a band of six hundred disguised men were placed under the command of Julian Romero.
The historian of the Rise of the Dutch Republic narrates that, near the hour of two o’clock in the morning, “ the boldest, led by Julian in person, made at once for the prince’s tent. This guards and himself were in profound sleep, but a small spaniel, who always passed the night upon his bed, was a *60 more faithful sentinel. The creature sprang forward, barking furiously at the sound of hostile footsteps, and scratching his master’s face with his paws. There was but just time for the prince to mount a horse which was ready saddled and to effect his escape through the darkness before his enemies sprang into the tent. His servants were cut down, his master of the horse and two of his secretaries who gained their saddles a moment later, all lost their lives, and but for the little dog’s watchfulness, William of Orange, upon whose shoulders the whole weight of his country’s fortunes depended, would have been led within a week to an ignominious death. To his dying day, the prince ever afterward kept a spaniel of the same race in his bed-chamber.”
This event occurred but a short time after the Paris wedding, and a shorter time after the St. Bartholomew tragedy.
The historian and moral philosopher can more appropriately discuss the influence which the watchfulness of the little spaniel had upon the destinies of the world. We can only state a reason for the law throwing around this animal its sanction that the right of property exists thereto, and that the right of property existing, it will be sure to receive the protection of man.
The power of any government to collect its revenue, and to punish for fraud or concealment, or to arrest for violation of rules in relation to the exercise of a mere franchise, is a different question to that involved in this case.
In the case before us, the entire record discloses a view od the part of the corporation ignoring the question of property, and proceeding as though a criminal deed had been done by the defendant, and the dog to be excluded from the list of subjects and objects of property. “If, then, the dog is a species of property, for the injury to which,” to quote the language of one of the authorities cited by defendant, “ a action at law may be sustained,” (Parker vs. Myers, 27 Ala. R.,) you cannot proceed against the owner of that property as though he were a culprit, such dog being upon his premises, where, of all the places in the world, he more properly belongs.
The ordinance in the form existing is inoperative, null, ai;J void, according to law.
The defendant is discharged and the warrant ciuashed.